CONSTANTINE G. CRISTO
2104 East 26th Street
Tulsa, OK 74114 U.S.A.
Email: cgcristo@protognosis.org
*Pro se litigant.*

# FILED

NOV 1 2 2025

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF OKLAHOMA

CONSTANTINE G. CRISTO,

          Plaintiff,

v.

CALIFORNIA FRANCHISE TAX BOARD;
CALIFORNIA DEPARTMENT OF GENERAL
SERVICES; CALIFORNIA GOVERNMENT
OPERATIONS AGENCY; SELVI STANILAUS,
in her official capacity as Executive Director of
California Franchise Tax Board; ANA M. LASSO,
in her official capacity as Director of the California
Dept. of General Services; NICOLAS MADUROS,
in his official capacity as Secretary of the California
Government Operations Agency; and GAVIN
NEWSOM, in his official capacity as Governor of
the State of California,

          Defendants.

**COMPLAINT FOR A CIVIL CASE
ALLEGING NEGLIGENCE**
  (28 U.S.C. § 1332; Diversity of
  Citizenship)

CASE NO.

2 5 CV - 6 0 9 GKF - CDL

Jury Trial:  ☐ Yes  ■ No



## I.   THE PARTIES TO THIS COMPLAINT

### A.   The Plaintiff

|  |  |
|---|---|
| Name: | CONSTANTINE G. CRISTO |
| Job or Title: | Retired |
| Street Address: | 2104 East 26th Street |
| City and County: | Tulsa, Tulsa County, |
| State: | Oklahoma |
| Zip: | 74114 |
| Telephone: | 760.638.1772 |
| Email: | cgcristo@protognosis.org |

### B.   The Defendant(s)

Defendant No. 1

|  |  |
|---|---|
| Name: | CALIFORNIA FRANCHISE TAX BOARD |
| Street Address: | 7575 Metropolitan Drive, Suite 201 |
| City and County: | San Diego, San Diego County |
| State: | California |
| Zip: | 92108 |
| Telephone: | 800.852.5711 |

Defendant No. 2

|  |  |
|---|---|
| Name: | CALIFORNIA DEPARTMENT OF GENERAL SERVICES |
| Street Address: | 707 Third Street |
| City and County: | West Sacramento, Sacramento County, |
| State: | California |
| Zip: | 95605 |
| Telephone: | 916.376.5000 |

Defendant No. 3

|  |  |
|---|---|
| Name: | CALIFORNIA GOVERNMENT OPERATIONS AGENCY |
| Street Address: | 1304 "O" Street, Suite 300 |
| City and County: | Sacramento, Sacramento County, |
| State: | California |
| Zip: | 95814 |
| Telephone: | 916.651.9071 |

Defendant No. 4
      Name:                        SELVI STANILAUS
      Job or Title:             Executive Director, Franchise Tax Board
      Street Address:        P.O. Box 115
      City and County:     Rancho Cordova, Sacramento County
      State:                     California
      Telephone:            800.883.5910

Defendant No. 5
      Name:                        ANA M. LASSO
      Job or Title:             Director, Department  of General  Services
      Street Address:        707 Third Street
      City and County:     Sacramento, Sacramento County,
      State:                     California
      Zip:                          95605
      Telephone:            916.376.5000

Defendant No. 6
      Name:                        NICOLAS MADUROS
      Job or Title:             Secretary of Government Operations
                                 for the State of California
      Street Address:        1304 "O" Street, Suite 300
      City and County:     Sacramento, Sacramento County,
      State:                     California
      Telephone:            916.651.9071

Defendant No. 7
      Name:                        GAVIN NEWSOM
      Job or Title:             Governor, State of California
      Street Address:        1021 "O" Street, Suite 9000
      City and County:     Sacramento, Sacramento County,
      State:                     California
      Telephone:            916.445.2841

## II.     BASIS FOR JURISDICTION

Plaintiff was a California citizen for more than 20 years. In 2020, Plaintiff traveled to Oklahoma to help care for an elderly relative, resulting in a prolonged stay. In 2023, Plaintiff was still in Oklahoma and, by his circumstances, became, and continues to be, a citizen of Oklahoma. Of the seven defendants identified above, none is a citizen of Oklahoma. The amount at stake exceeds $75,000, involving damages emanating from acts or failures to act by the Defendants while Plaintiff was a citizen of California and after he became a citizen of Oklahoma.

**A.     The Plaintiff**
The Plaintiff, CONSTANTINE G. CRISTO, is a current citizen of the State of Oklahoma.

**B.     The Defendants**
Defendant No. 1, CALIFORNIA FRANCHISE TAX BOARD ("FTB"), is incorporated under the laws of the State of California, and has its principal place of business in California.

Defendant No. 2, CALIFORNIA DEPARTMENT OF GENERAL SERVICES ("CDOGS"), is incorporated under the laws of the State of California and has its principal place of business in California.

Defendant No. 3, CALIFORNIA GOVERNMENT OPERATIONS AGENCY ("CGOA"), is incorporated under the laws of the State of California, and has its principal place of business in California.

Defendant No. 4, SELVI STANILAUS ("Stanislaus") is a citizen of the State of California.

Defendant No. 5, ANA M. LASSO ("Lasso") is a citizen of the State of California.

Defendant No. 6, NICOLAS MADUROS ("Maduros") is a citizen of the State of California.

Defendant No. 7, GAVIN NEWSOM ("Newsom") is a citizen of the State of California.

C.      **The Amount in Controversy.**

The amount in controversy—the amount the Defendants collectively owe or is at stake—is more than $75,000, not counting interest, and costs of court, because:

- On June 30, 2022, Governor Newsom, in his FY 2022-23 CA State Budget, allocated $308 billion in emergency relief to 23 million Californians to help address inflation, state needs, build reserves, and invest in future projects. Under the Better For Families Act ("BFFA"), $9.5 billion in relief was to help 17.5 million Californians.[1]

- Having timely filed his 2020 California state tax return by October 15, 2021, Plaintiff was entitled to the emergency relief known as the Middle Class Tax Refund ("MCTR"), California's multi-billion-dollar program to provide emergency relief to California taxpayers.

- Beginning on October 31, 2022, through gross negligence, gross incompetence, and/or government employee participation in the fraudulent withdrawal of the pre-loaded MCTR payments from debit cards issued by MONEYNETWORK FINANCIAL, LLC ("MoneyNetwork"), the FTB and CDOGS jointly failed to protect Plaintiff's right to receive the MCTR payment.

- Completely ignoring and/or dismissing modern methods of identity verification, the FTB demanded that the only way Plaintiff could prove his identity was to travel from Tulsa, Oklahoma, to San Diego, to personally appear and present his original passport and driver's license, in order to process his payment.

- Beginning on March 1, 2024, FTB staff refused to identify the amount of the MCTR refund to which Plaintiff was entitled, forcing Plaintiff to travel to California to even

---

[1] *See* CA State budget FY 2022-23, "*Governor Newsom Signs Budget Putting Money Back in Californians' Pockets and Investing in State's Future,*" Press Release, June 2022 and MCTR-FTB 2022.

learn how much the MCTR payment was to secure the payment.

## III.   STATEMENT OF CLAIM

Plaintiff was entitled to receive the MCTR payment. The collective actions of the Defendants, or failure to perform the acts mandated by the California legislature, caused Plaintiff harm, expense, loss of income, and distress.

## CLAIM # 1: Defendant #1-The Franchise Tax Board

***FACT #1:***    The California Taxpayers' Bill of Rights, Revised 12/2017 ("CTBOR"), <u>requires the FTB to adequately protect the rights, privacy, and property of all California taxpayers</u>.[2] (emphasis added)

***FACT #2:***  The primary function of the FTB is to administer the Revenue and Taxation Code ("R&TC"). "It is the responsibility of each person employed by the FTB and charged with interpreting the law to try to find the true meaning of the statutory provision and not to adopt a strained construction in the belief that he or she is 'protecting the revenue.' "[3] "To accomplish its mission, we develop knowledgeable and engaged employees, administer the law with fairness and integrity, and responsibly manage the resources allocated to it." [4]

***FACT #3:***  On August 12, 2020, Plaintiff traveled from his prior residence in San Diego, CA, to Tulsa, OK, to assist in caring for an elderly relative whose health was failing. Before traveling,  Plaintiff pre-arranged with the U.S. Postal Service ("USPS") to have all mail forwarded from his P.O. Box in Valley Center, California, to his address in Oklahoma.

---

[2] FTB 4058C EN, California Taxpayers' Bill of Rights, Revised 12/2017.
[3] *Id.,* 'Statement of tax administration principles' ¶ 3.
[4] Id., 'Mission of the Franchise Tax Board' ¶ 1.

***FACT #4***:    In June 2022, California legislative leaders had voiced their preference in how the FTB would distribute the MCTR to taxpayers:

> "Legislative leaders initially wanted to send payments the traditional way with [direct] deposits and checks through California's Franchise Tax Board, which is the agency responsible for collecting and administering state income tax.[5]

However, according to KCRA-Channel 3,[6] Governor Newsom did not agree:

> "The governor proposed sending debit cards, claiming it would be faster than cutting checks."[7]

***FACT #5***:    In June 2022, during a budget hearing, Assemblymember Phil Ting ("Ting"), D-San Francisco, told Gov. Newsom's administration:

> "I'm skeptical that you could even choose a reliable vendor for debit cards in two months."[8]

Ting's statement was in response to Governor Newsom's proposed use of debit cards to distribute the MCTR payment. Governor Newsom must have disagreed with Ting, in that the FTB chose to seek an outside vendor to distribute the MCTR payment via pre-loaded debit cards.

***FACT #6***:    In June 2022, responding to high inflation and record-breaking gas prices, the Legislature and Governor enacted the Better for Families Act ("BFFA"), authorizing the MCTR payments. Under BFFA, FTB is responsible for administering the MCTR program and paying eligible recipients. <u>The law made FTB accountable for determining the form and manner in which it would provide the payments</u> (emphasis added).

---

[5] Zavala, Ashley, CA Capitol Correspondent, '*California lawmaker wants an audit of the Middle Class Tax Refunds*' January 23, 2023, See https://www.kcra.com/article/california-lawmakers-want-an-audit-of-the-middle-class-tax-refunds/42623431.

[6] KCRA Channel 3 is the local NBC affiliate in Sacramento, CA.

[7] Zavala, Ashley, CA Capitol Correspondent, '*California lawmaker wants an audit of the Middle Class Tax Refunds*' January 23, 2023, See https://www.kcra.com/article/california-lawmakers-want-an-audit-of-the-middle-class-tax-refunds/42623431.

[8] *Id.*

*FACT #7*:  Under certain statutory conditions, CDOGS can "procure Goods and Services through negotiation"—rather than finding the optimal vendor through the qualification process. This served as the basis for FTB collaborating with CDOGS to sidestep the process of requesting proposals and qualifications—a risky choice and decision. FTB claims that the solicitation was done as an Invitation to Negotiate ("ITN").

The plaintiff has been unable to determine whether the collaboration allowed FTB to use the CDOGS allowance to circumvent the qualification process, or whether CDOGS was deemed jointly responsible with FTB in the event the negotiation process resulted in theft and fraud. According to the State Auditor, General Services cited two conditions as the rationale for using a negotiation process for the FTB's MCTR procurement:

> (1)    The State knows the business need or purpose for the agreement, but a negotiation process may identify different types of solutions to fulfill the need or purpose, and
>
> (2)    The State knows the business need or purpose for the agreement, but a negotiation is necessary to ensure it receives the best value or the most cost-effective goods or services.[9]

The problem with the two conditions stated by CDOGS as the rationale for using a negotiation process for the FTB's MCTR procurement was that they made no mention of the security of the $10 billion in tax refund to be distributed or the qualifications of the invited vendor.

*FACT #8*:    On June 27, 2022, CDOGS invited MoneyNetwork to enter negotiations. After three days of talks between FTB and MoneyNetwork, on July 1, 2022, the FTB signed an agreement with MoneyNetwork to provide (a)

---

[9] State Auditor's Report on the Middle Class Tax Refund Payments audit. March 7, 2024.

debit card production and distribution, (b) customer service, and (c) <u>fraud protection</u>. (emphasis added).[10]

**FACT #9**:  The FTB had developed six MCTR Procurement Evaluation Criteria in selecting a vendor to distribute the pre-loaded debit cards: (1) Implementation timeline, (2) Fraud and security, (3) Debit card and customer service solution, (4) System integration, (5) Company experience, and (6) Preliminary cost estimates. How is it possible that in three days, the FTB could adequately evaluate the qualifications of MoneyNetwork to be trusted with $10-billion of State funds allocated for taxpayer emergency relief to fulfill the evaluation criteria?

Although the State Audit employed non-aggressive language in evaluating the FTB's performance, it is clear that the FTB failed to meet all six criteria.

**FACT #10**:  The State Audit Report is a comprehensive document that Plaintiff incorporates by reference to be included as facts addressing the failures of the FTB and/or CDOGS. A summary of Key Findings and Recommendations follows:

> • "FTB did not ensure that MoneyNetwork consistently provided cardholders the required level of customer service. Although MoneyNetwork received more than 29 million calls—the vast majority of which were handled by its automated system— MoneyNetwork did not answer nearly 900,000 of the roughly two million phone calls from callers seeking to speak with an agent about the MCTR program or issues with their debit cards. Weaknesses in FTB's agreement with MoneyNetwork made it difficult to hold MoneyNetwork accountable for its poor customer service.

---

[10] *Id.*

- "Although MoneyNetwork reported a fraud rate to FTB of less than 1 percent of the amount distributed through debit cards, the State cannot determine the precise level of fraud in the MCTR program because MoneyNetwork did not answer a substantial portion of cardholder calls and has not specifically tracked fraud in the program.

- "Because the agreement's payment structure bundles most services into a single per-card rate, <u>FTB paid to MoneyNetwork nearly 90 percent of the agreement's total cost in the first 15 months of the 49-month agreement period</u> (emphasis added). This front-loaded payment structure does not fully safeguard the State's best interests. In addition, the agreement with MoneyNetwork does not include provisions allowing FTB to assess agreed-upon liquidated damages if MoneyNetwork does not comply with the agreement terms, provisions we found in other state agreements for similar services.

- "Drawing on this experience, the State should prepare for future statewide financial relief payments by establishing master agreements with debit-card vendors. Additionally, the State should consider how it can build a stronger capacity to deliver financial relief payments through various payment methods, including checks, direct deposit, and debit cards."[11]

The State Audit Report findings, even utilizing non-aggressive language, demonstrate that the FTB was guilty of, and is liable for, negligent entrustment to an unknown out-of-state vendor with no guarantee for the security of the funds. The FTB knew or should have known MoneyNetwork was unfit or incompetent to distribute the $10 billion MCTR tax refund if it had actually investigated it.

**_FACT #11:_**  On January 23, 2023, KCRA-3 reported the following:

"Following months of issues with California's Middle Class Tax Refund payments, the leader of the state's Joint Legislative Audit Committee is calling for a review of the inflation relief program. Assemblyman David Alvarez ("Alvarez"), the Democratic chairman

---

[11]  *Id.*

of the committee, announced he will pursue a state audit of the Franchise Tax Board's handling of the payments first promised to taxpayers in response to rising inflation and gas prices early last year.  Alvarez said he and other lawmakers are concerned about issues reported by their constituents and a lack of responsiveness from FTB."[12]

**_FACT #12_**:  On March 1, 2024, the FTB wrote to Plaintiff stating the following:

"You are receiving this letter because our records indicate as of February 27, 2024, <u>you have not yet activated your Middle Class Tax Refund ("MCTR") payment card that was mailed by MoneyNetwork</u> (emphasis added) to you between October 2022 and October 2023."[13]

**_FACT #13_**:  In _FACT #12_ above, the FTB represented to KCRA-3 that the MCTR recipients received a MoneyNetwork debit card between October 2022 and October 2023.  Plaintiff received <u>no</u> such payment card from 'MoneyNetwork' or anyone else.

**_FACT #14_**:  On March 7, 2024, as directed by the Joint Audit Committee,  the State Auditor's office audited the MCTR payments, focused on the FTB administration of MCTR payments.

**_FACT #15_**:  On or about April 20, 2024, Plaintiff attempted to call the 800-number for MoneyNetwork provided in FTB's March 1st letter to determine why he did not receive the MCTR payment card. Unfortunately, because Plaintiff had never received the payment card, Plaintiff could not provide the 4-digit security code from the back of the alleged card. As a result, Plaintiff could not gain access to the online activation process or speak to any live human to discuss his problem of not having received the card.

---

[12] *See Footnote 4.*
[13] Letter from FTB to Plaintiff dated March 1, 2024, mailed to his Oklahoma address.

**_FACT #16_**:     Unable to reach MoneyNetwork by phone or online, Plaintiff performed an online search using keywords like MCTR, which revealed that on February 3, 2023, Sacramento's KCRA-3 reported the first round of payments were issued to California taxpayers in October 2022:

> "Shortly after the first round of payments went out, '_KCRA-3 Investigates_' began receiving countless phone calls and emails from Californians up and down the state who reported various issues, including debit cards being drained of funds and not receiving payments." (emphasis added)[14]

**_FACT #17_**:     According to the article's author, investigative reporter Brittany Johnson ("Johnson"), many taxpayers reached out to FTB for help but were told to contact MoneyNetwork. In her article,  Johnson posed the rhetorical question:

> "What is MoneyNetwork, and why was this out-of-state company chosen to process and mail California's tax refunds?"[15]

In response to Johnson's own question, KCRA-3 uncovered a troubling condition:

> "Stick with us. There's a lot to untangle. MONEYNETWORK FINANCIAL, LLC , is owned by FISERV, INC. ["FISERV"]. MoneyNetwork was [originally] acquired by FIRST DATA RESOURCES ["FIRSTDATA"], which is a payment service company originally based in Omaha, Nebraska. Does Omaha, Nebraska, ring a bell? If so, that's because it is listed as the mailing address on the envelope your debit card came in. In 2019, First Data Resources was acquired by—you guessed it— FISERV. So, the lead over-arching company in charge of your MCTR is—FISERV"[16]

---

[14] Johnson, Brittany, _Middle Class Tax Refund: What is MoneyNetwork and why did California hire them for debit cards?_, Feb. 3, 2023, https://www.kcra.com/article/middle-class-tax-refund-what-is-money-network-california/42739856#:~:text=California's%20tax%20refunds%3F-,Stick%20with%20us.,is%20owned%20by%20Fiserv%2C%20Inc.

[15] _Id._

[16] _Id._

**_FACT #18_**:  KCRA-3 alerted California taxpayers that:

> "FISERV is not a bank, which means that FISERV and MONEY NET are not regulated by any of the federal banking regulators, according to our government sources. This is why they use '*My Banking Direct*', a service of NEW YORK COMMUNITY BANK [NYCB], to issue the debit cards. We found that New York Community Bank is inactive, and it merged with Flagstar Bank (emphasis added), which is a regulated institution."[17]

If the FTB ignored the warnings of its Legislative Leaders, or if it chose to act according to Governor Newsom's proposal despite Assemblymember Ting's concern at the MCTR's June hearing, then FTB has caused the problem affecting millions of taxpayers. CGOA has failed to monitor its sub-agency, thereby allowing a massive theft of state funds earmarked for taxpayers, and has made the Office of the Governor effectively complicit in the theft under Governor Newsom's oversight of his cabinet-level agencies. Even a person of ordinary prudence would, in such a circumstance, question the entrustment of California's $10-billion tax refund to a single, out-of-state, non-bank company that no one seems to have ever heard of.[18]

**_FACT #19_**: KCRA-3 reached out to FTB, requesting copies of its Request for Proposals (RFP) and Request for Qualifications (RFQ) used to find a qualified debit card vendor to implement the MCTR. FTB's spokesperson responded by stating:

> "no Request for Proposals or Request for Qualifications for this bidding process. The solicitation was done as an Invitation to Negotiate (ITN) due to the timeframe required to administer the program."[19]

---

[17] *Id.*
[18] *Id.*
[19] *Id.*

**_FACT #20:_**  According to FTB's spokesperson:

> "21 entities expressed interest in the Middle Class Tax Refund program, and five ended up submitting a bid. The following companies participated in the bidding process:
> - FIX Global
> - USIO
> - MoneyNetwork
> - Group O
> - Conduent Government Solutions
>
> Also note from the FTB, the state distributed previous refunds by direct deposit and checks."[20]

Plaintiff has researched the companies that submitted bids.  None of the companies has a history of payment distribution on a scale comparable to the MCTR payment distribution.

_FIX Global_ makes no mention of the ability to implement a $ 10 billion tax refund program, but instead appears to be a standardized electronic messaging system used for exchanging financial information between market participants.

_USIO Inc_. does provide debit card services. However, its 2022 annual revenues were under $20-million, which would probably struggle to distribute $10-billion in tax refunds in one year.

_Group O_ is a multi-faceted business specializing in supply chain, packaging, and incentive marketing solutions. Nowhere on its website does it claim expertise in distributing prepaid debit cards.

**_FACT #21:_**  According to the FTB:

> ". . . for MCTR if we had relied on issuing direct deposits and checks, we would have completed the MCTR program in late summer

---

[20] _Id._

[2023] this year due to limitations of the state financial systems, a spokesperson told KCRA-3 via email. Many felt this was unacceptable, and we agreed. The State pivoted to considering the use of debit cards."[21]

Nine months after the unacceptable method of direct deposit and checks would have been completed, there were still hundreds of thousands of angry taxpayers who had yet to receive cards, and many who had received cards that were fraudulently drained of the pre-loaded refund payment, with no solution on the horizon.

**_FACT #22_**:   According to an article published by Newsweek on May 20, 2024, 624,000 California taxpayers had not yet activated their preloaded debit cards. Never having received the alleged debit card, Plaintiff was in this group.[22]

**_FACT #23_**:  According to the FTB:

> "MoneyNetwork was chosen because it was the only bidder that stated it could put security chips on all of the debit cards. "[23]

With billions of dollars being entrusted to an outside source, even a person of ordinary prudence would, in this circumstance, check to make sure that the cards were, in fact, issued with security chips.

**_FACT #24_**:  KCRA-3 reported that:

> "Most of the viewers we heard from with issues have been ones who have a debit card with no security chip. KCRA-3 reached out to FISERV, the company that owns MoneyNetwork, for comment on this report and to get questions answered for our viewers. FISERV declined our interview request,

---

[21] *Id.*

[22] Meyer, Chloe, *Stimulus Check Update: 624,000 Preloaded Cards Not Activated,* May 20,2024, Newsweek
    https://www.newsweek.com/california-stimulus-checks-mctr-debit-cards-not-activated-used-1902559.

[23] *See footnote 7.*

didn't provide a statement, and referred us back to the Franchise Tax Board."[24]

**_FACT #25_**: About May 1, 2024, Plaintiff called FTB to explain his struggle to contact MoneyNetwork or FISERV. The FTB agent stated that MoneyNetwork was the only entity capable of providing the payment card. Plaintiff asked for the 4-digit code on the back of his card. FTB noted that they couldn't give the code because they couldn't confirm the Plaintiff's identity. Plaintiff asked whether sending copies of his passport and driver's license would be sufficient to obtain the 4-digit code. FTB replied negatively, stating, "The only way we can verify who you are is if you appear at FTB's office in San Diego and present your passport and driver's license.

**_FACT #26_**:   Due to his financial insolvency, Plaintiff was forced to borrow a car to drive from Tulsa to San Diego. On May 15, 2024, Plaintiff drove to San Diego, stopping overnight in Gallup, NM.

**_FACT #27_**:  On May 17, 2024, Plaintiff presented himself and his identification papers to FTB's agent at its San Diego office. During the interview, after the plaintiff produced his passport and driver's license, the agent provided him with a slip of paper containing a 4-digit code to access the MoneyNetwork portal. After spending two hours at the FTB office, the agent claimed that because the card had expired, Plaintiff was no longer entitled to the MCTR. After leaving the FTB office, Plaintiff attempted to access the portal using his 4-digit security code, but was rejected because the card had expired. After three attempts, the portal just hung up the call.

**_FACT #28_**: On Monday, May 20, 2024, the Plaintiff returned to FTB's office and demanded to speak with the office manager. After explaining his history with

---

[24] *Id.*

the MCTR, the manager advised the Plaintiff to check in again at the front desk, and when called by the next available agent, to tell the agent to email her [the office manager] to begin the process. The Plaintiff was finally called, and the agent reviewed the same information as on May 17th. Still, this time, the office manager I had spoken to was hovering behind the agent throughout the repetitive process. Then the manager returned to her desk to receive the email from the staff member who had sent it from 20 feet away.

The Plaintiff was called to speak with the same manager once more. Since the card had expired, the Plaintiff asked if he could receive a check for the MCTR. The manager responded, "The FTB does not issue checks." The Plaintiff pressed her, asking, "Then how does FTB pay its electric bill?" The manager changed her response to, "The FTB does not issue checks to taxpayers." Finally, the Plaintiff asked if there was no other way to receive his emergency refund. The manager answered negatively and added that it would take quite some time to obtain a new card, because so many taxpayers had not received theirs.

**_FACT #29_**: On May 30, 2024, the Plaintiff sent a demand letter to Stanislaus at the FTB headquarters, outlining the entire series of events related to the MCTR, as well as the expenses incurred to travel in person to show his actual passport and driver's license. The costs were itemized in his demand letter to the FTB as of May 30, 2024. <u>As of October 31, 2025, it has been 519 days since neither the FTB nor any of the Defendants has ever contacted the Plaintiff to respond to his demand letter</u> (emphasis added). Clearly, neither the FTB nor any of the Defendants has any intention of responding to the demand letter.

**_FACT #30_**:   On January 29, 2025, Plaintiff called the office of Assemblyman David Alvarez's office and inquired as to whether or not an audit was conducted of the MCTR matter. Alvarez's assistant stated that the audit had been performed but that the resulting report had not been released to the public.

In total, the FTB did not meet the mandated standard specified in the CTBOR. Instead, it failed miserably, pushing through an ill-conceived, ill-fated process that entrusted billions of dollars in tax refunds to a previously unknown entity, which was sold and resold by private-sector entities with no responsibility to California taxpayers. Although some taxpayers received their refunds, others, like Plaintiff, are told that the process will take a very long time to fix.

By virtue of FTB's complete dereliction of duty, mandate, and responsibility to negligently entrust the $10 billion MCTR tax refund, MoneyNetwork's incompetence and failure in every aspect of the distribution were the direct and foreseeable cause of the Plaintiff's damages. Plaintiff submits this Claim #1 to the Court.

## CLAIM # 2: Defendant #2 - Department of General Services

**_FACT #31_**: Plaintiff incorporates by reference Facts Nos. 1 through 30 in Claim #1 into this Claim #2. Defendant No. 2 is responsible for the internal oversight of Defendant No. 1, regarding the fulfillment of its obligations to the State and to the taxpaying citizens of California.

**_FACT #32_**:   Defendant No. 2, the California Department of General Services (CDOGS) website describes itself as follows:

> "The California Department of General Services (DGS) serves as the business manager for the state, with nearly 4,500 employees and a budget of $1.3 billion. DGS serves the public by providing a variety of services to state agencies through procurement and acquisition solutions; real estate management and design; environmentally friendly transportation; professional printing, design and web services; administrative hearings; legal services; building standards; oversight of structural safety, fire/life safety and accessibility for the

design and construction of K-12 public schools and community colleges; funding for school construction; and disability access."[25]

***FACT #33***:   Under certain statutory conditions, CDOGS is allowed to "procure Goods and Services through negotiation"—rather than finding the optimal vendor through the qualification process. Plaintiff alleges that CDOGS' "collaboration" was unable to provide any protection against fraud, as well as the other failures of utilizing the State's Invitation to Negotiate (ITN). Plaintiff alleges that by collaborating with the FTB, CDOGS essentially was jointly the cause of Plaintiff's damages.

Clearly, Defendant #2 has completely failed in its oversight responsibilities.. By virtue of CDOGS's complete dereliction of duty, mandate, and commitment to perform its obligation, Plaintiff submits this Claim #2 to the Court.

## CLAIM # 3: Defendant #3 - California Government Operations Agency

***FACT #34***: Plaintiff incorporates by reference Facts #s 1 through 33 in Claim #2 into this Claim #3. Defendant No. 3 is responsible for the internal oversight of Defendants Nos. 1 and 2, regarding the fulfillment of its obligations to the State and to the taxpaying citizens of California.

***FACT #35***:   Defendant No. 3, CGOA, describes itself on its website as:

"The Government Operations Agency leads implementation of strategic initiatives focused on accelerating innovation in state operations. The Agency is one of 11 cabinet-level agencies that

---

[25] *See* https://www.dgs.ca.gov/About

reports to the Governor. It oversees and supports the work of 13 departments, boards, and offices with more than 22,000 employees and an annual budget of $67 billion."[26]

The breadth of CGOA's assessment of itself suggests that it is a formidable force in ensuring that its sub-agencies achieve a high standard of performance and initiative. The FTB is one of those sub-agencies within its purview. In fact, the top of CGOA's homepage (govops.ca.gov) goes further by stating:

"GovOps works to accelerate innovation, develop a skilled workforce, (emphasis added) and promote result-oriented practices in partnership with more than 150 departments statewide."[27]

If CGOA performs as it describes itself, it is undoubtedly worth the cost of its $ 67 billion annual budget. CGOA admits it is responsible for overseeing the FTB in fulfilling its obligations to the State and to the taxpaying citizens of California. Plaintiff alleges to the Court that CGOA failed to perform its oversight responsibility to protect the California taxpayers in a fashion that a person of ordinary prudence would have chosen to employ. In light of its $ 67 billion budget, CGOA should have known that outsourcing a $10 billion tax refund to an entity that had to be acquired or merged three times cannot be described as a prudent FTB decision. Therefore, CGOA's refusal to oversee, review, and ensure the MCTR is correctly implemented is a complete failure to the State and California taxpayers.

Accordingly, due to CGOA's complete neglect of duty, mandate, and responsibility to fulfill its obligations, Plaintiff submits this Claim #3 to the Court.

## CLAIM # 4: Defendant #4 - SELVI STANILAUS

---

[26] *See* https://www.govops.ca.gov/about-the-california-government-operations-agency/
[27] *See* https://www.govops.ca.gov

***FACT #36***: Plaintiff incorporates by reference Facts #s 1 through 35 in Claim #3 into this Claim #4. Defendant No. 4 is responsible for the internal oversight of Defendant No. 1, regarding the fulfillment of its obligations to the State and to the taxpaying citizens of California.

***FACT #37***:  Defendant No. 4 is the Executive Director of Defendant No. 1. As the top management executive who is responsible for the internal oversight of Defendant No. 1, regarding the fulfillment of its obligations to the State and to the taxpaying citizens of California.

Accordingly, due to Defendant No. 4's complete neglect of duty, mandate, and responsibility to fulfill its obligations as the top executive of the FTB, Plaintiff submits this Claim #4 to the Court.

## CLAIM # 5: Defendant #5 - ANA M. LASSO

***FACT #38***: Plaintiff incorporates by reference Facts #s 1 through 37 in Claim #4 into this Claim #5. Defendant No. 5 is responsible for the internal oversight of Defendants Nos. 1 and 2, regarding the fulfillment of their obligations to the State and to the taxpaying citizens of California.

***FACT # 39***:  Defendant No. 5 is the Director, CDOGS, Defendant No. 2. As the top management director, who is responsible for directing Defendant No. 2 to fulfill its oversight responsibilities over Defendant No. 1, regarding the fulfillment of its obligations to the State and to the taxpaying citizens of California.

Accordingly, due to Defendant No. 5's complete neglect of duty, mandate, and responsibility to fulfill its obligations, Plaintiff submits this Claim #5 to the Court.

### CLAIM # 6: Defendant #6 – NICOLAS MADUROS

***FACT #40:*** Plaintiff incorporates by reference Facts #s 1 through 39 in Claim #5 into this Claim #6. Defendant No. 6 is responsible for the internal oversight of Defendants Nos. 1 and 2, regarding the fulfillment of their obligations to the State and to the taxpaying citizens of California.

***FACT# 41:*** Defendant No. 6 is the Secretary of Defendant No. 3. As the top Secretary, who is responsible for directing Defendant No. 3 to fulfill its oversight responsibilities over Defendant Nos. 1 and 2, regarding the fulfillment of its obligations to the State and to the taxpaying citizens of California.

Accordingly, due to Defendant No. 6's complete neglect of duty, mandate, and responsibility to fulfill its obligations, Plaintiff submits this Claim #6 to the Court.

### CLAIM # 7: Defendant #7 – GAVIN NEWSOM

***FACT #42:*** Plaintiff incorporates by reference Facts #s 1 through 41 in Claim #6 into this Claim #7. Defendant No. 7 is responsible for the internal oversight of Defendants Nos. 1, 2, and 3, regarding the fulfillment of their obligations to the State and to the taxpaying citizens of California.

***FACT # 43:*** Defendant No. 7 is the Governor of the State of California and is the source of the decision to outsource a $10 billion emergency tax rebate to an out-of-state entity that was hopelessly unqualified to distribute the emergency tax relief payments. As the top executive of the State of California, and in his

decision to address the concerns raised by the legislature, he is responsible for directing Defendant Nos. 1, 2, and 3 to fulfill their responsibilities regarding Defendant No. 1, including its obligations to the State and to the taxpaying citizens of California.

Accordingly, due to Defendant No. 7's complete neglect of duty, mandate, and responsibility to fulfill its obligations, Plaintiff submits this Claim #7 to the Court.

## IV.    RELIEF

### CLAIM # 1

Due to the collective negligence or incompetence of Defendant No. 1, in addition to the actual damages, which include the Emergency MCTR payment and travel expenses Plaintiff was forced to expend in traveling from Tulsa to San Diego to Tulsa, and loss of time to perform his work, Plaintiff requests the Court to order actual damages of (a) $7,042.10 (b) exemplary damages of $25,000 for the distress of waiting for a response for more than a year which remains unanswered at the time of filing, (c) punitive damages of $25,000 for completely ignoring Plaintiff's demand letter dated May 30, 2024, and subsequently refusing to acknowledge its responsibility to uphold and execute the mandate of the State of California, and (d) plus interest and court costs associated with having to file suit to recover damages.

### CLAIM # 2

Defendant No. 2 is responsible for the internal oversight of Defendant No. 1, regarding the fulfillment of its obligations to the State and to the taxpaying citizens of California. Plaintiff requests the Court to order (a) additional damages of $25,000 for the distress of waiting for a response from Defendant No. 1, which to this date, and (b)  punitive damages of $25,000 for completely ignoring Plaintiff's demand letter dated May 30, 2024, and subsequently refusing to require Defendant #1 to respond to his demand letter and thereby acknowledge its responsibility to uphold and execute the mandate of the State of California. Defendant No. 2 has completely refused

to oversee Defendant No. 1 and acknowledge its responsibility to uphold and execute the mandate of the State of California.

### CLAIM # 3

Defendant No. 3 is responsible for the internal oversight of Defendant Nos. 1 and 3, regarding the fulfillment of its obligations to the State and to the taxpaying citizens of California. Plaintiff requests the Court to order (a) additional damages in the amount of $25,000 for the distress of waiting for a response from Defendant No. 1, while in a financial state of insolvency, and (b) punitive damages of $25,000 for completely ignoring Plaintiff's demand letter dated May 30, 2024, and subsequently refusing to require Defendant #1 to respond to his demand letter and thereby acknowledge its responsibility to uphold and execute the mandate of the State of California. Defendant No. 3, to this date, has refused to recognize its commitment to uphold and execute the mandate of the State of California.

### CLAIM # 4

Defendant No. 4 is the Executive Director of Defendant No. 1. As the top management executive who is responsible for the internal oversight of Defendant No. 1, regarding the fulfillment of its obligations to the State and to the taxpaying citizens of California. Plaintiff requests the Court to order (a) additional damages in the amount of $25,000 for the distress of waiting for a response from Defendant No. 1, and (b) punitive damages of $25,000 for completely ignoring Plaintiff's demand letter dated May 30, 2024, and subsequently refusing to require Defendant #1 to respond to his demand letter and thereby acknowledge its responsibility to uphold and execute the mandate of the State of California. Defendant No. 4 has, to this date, refused to acknowledge her responsibility to uphold and execute the mandate of the State of California.

### CLAIM #5

Defendant No. 5 is the Director of CGOA, Defendant No. 3. As the top management director, who is responsible for directing Defendant No. 3 to fulfill its oversight responsibilities over Defendant No. 1, regarding the fulfillment of its obligations to

the State and to the taxpaying citizens of California. Plaintiff requests the Court to order (a) additional damages of $25,000 for the distress of waiting for a response from Defendant No. 1, and (b) punitive damages of $25,000 for completely ignoring Plaintiff's demand letter dated May 30, 2024, and subsequently refusing to require Defendant #1 to uphold its responsibility to respond to Plaintiff's demand letter and thereby acknowledge its responsibility to uphold and execute the mandate of the State of California.  Defendant No. 5 has, to this date, refused to acknowledge her responsibility to uphold and execute the mandate of the State of California.

## CLAIM #6

Defendant No. 6 is the Director, Department of General  Services for the State of California,  Defendant No. 2.  As the top management director, who is responsible for directing Defendant No. 2 to fulfill its oversight responsibilities over Defendant No. 1, regarding the fulfillment of its obligations to the State and to the taxpaying citizens of California. Plaintiff requests the Court to order (a) additional damages of $25,000 for the distress of waiting for a response from Defendant No. 1, and (b) punitive damages of $25,000 for completely ignoring Plaintiff's demand letter dated May 30, 2024, and subsequently refusing to require Defendant #1 to respond to his demand letter and thereby acknowledge its responsibility to uphold and execute the mandate of the State of California. Defendant No. 6, to this date, has refused to acknowledge his responsibility to uphold and execute the mandate of the State of California.

## CLAIM #7

Defendant No. 7 is the Governor of the State of California and is the source of the decision to outsource a $10 billion emergency tax rebate to an out-of-state entity that was hopelessly unqualified to distribute the emergency tax relief payments. As the top executive of the State of California, and in his decision to address the concerns raised by the legislature, he is responsible for directing Defendants No. 2 and 3 to fulfill their responsibilities regarding Defendant No. 1, including its obligations to the State and to the taxpaying citizens of California. Plaintiff requests the Court to order additional damages in the amount of $25,000 for the pain and suffering of waiting for

a response from Defendant No. 1, while in a financial state of insolvency, which to this date, has completely ignored the demand letter and refused to acknowledge its responsibility to uphold and execute the mandate of the State of California.

|  |  |  |
|---|---|---|
| Claim #1: | (a) | $7,042.10 |
|  | (b) | $25,000.00 |
|  | (c) | $25,000.00 |
| Claim #2: | (a) | $25,000.00 |
|  | (b) | $25,000.00 |
| Claim #3: | (a) | $25,000.00 |
|  | (b) | $25,000.00 |
| Claim #4: | (a) | $25,000.00 |
|  | (b) | $25,000.00 |
| Claim #5: | (a) | $25,000.00 |
|  | (b) | $25,000.00 |
| Claim #6: | (a) | $25,000.00 |
|  | (b) | $25,000.00 |
| Claim #7: | (a) | $25,000.00 |
|  | (b) | $25,000.00 |

TOTAL RELIEF SOUGHT:          $357,042.10 + interest and court costs

## V.    CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:   11/12/2025

Signature of Plaintiff:

Constantine Gus Cristo
Tel: 760.638.1772
Email: cgcristo@hellene.org

2104 East 26th Street
Tulsa, OK 74114 USA